# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SHARON L, CURRY,                          :

                      Case No. 3:10-cv-366

        Plaintiff,

                      District Judge Thomas M. Rose
                      Magistrate Judge Michael R. Merz

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.       :

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.  *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on August 4, 2004, alleging disability since April 9, 2004. (Tr. 59-62). The Commissioner denied Plaintiff's application at the initial level and Plaintiff took no further appeal. (Tr. 38-40).

Plaintiff filed applications for SSD and SSI on August 5, 2005, alleging disability since January 1, 2005, due to diabetes, a kidney impairment, a heart impairment, depression, high blood pressure, and high cholesterol. (Tr. 63-67; 704-07; 99). The Commissioner denied Plaintiff's applications initially and on reconsideration. (Tr. 41-43, 44-45; 709-11, 713-15). Administrative Law Judge Daniel Shell held a hearing, (Tr. 718-43), following which he determined Plaintiff is not disabled. (Tr. 16-31). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that she has severe mild degenerative disc disease of the lumbar spine, mild coronary artery disease, peripheral vascular disease, mild degenerative joint disease of the right shoulder, and affective and anxiety disorders, but that she does not have an impairment or combination of impairments that meets or equals the Listing. (Tr. 21, ¶ 3, Tr. 23, ¶ 4). Judge Shell also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 26, ¶ 5). Judge Shell then used section 202.14 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 30, ¶ 10). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 31, ¶ 11).

4

In her Statement of Errors, Plaintiff refers to her "combination of physical and mental impairments". (Doc. 8). However, Plaintiff's argument in support of her Error is related solely to her alleged mental impairment. *Id.* Specifically, Plaintiff argues in her Statement of Errors that the Commissioner erred by rejecting Dr. Blair's opinion about Plaintiff's abilities to perform the mental demands of work. *Id.* Accordingly, the Court will focus its review of the record on the mental health evidence.

Plaintiff sought mental health treatment at Samaritan Behavioral Health in September, 2004, when she reported that she had recently been fired from her job at Walmart for allegedly giving another employee two pills which she denied doing, that she was not able to sleep, eat, or concentrate, and that she felt like crying all the time. (Tr. 239-49). Plaintiff also reported that she had received mental health treatment in the 1980s. *Id.* The evaluating mental health specialist noted that Plaintiff reported past use of alcohol, marijuana, hashish, stimulants, sedatives, and hallucinogens, that she was depressed, and that her diagnoses were adjustment disorder with depressed mood and rule out major depressive disorder, recurrent, and that her GAF was 45. *Id.*

Examining psychologist Dr. Jones reported on February 15, 2005, that Plaintiff started using alcohol, LSD, and marijuana at the age of sixteen, had been chemically free since 1997, graduated from high school, attended Sinclair Community College for approximately one quarter, was last employed in April, 2004, at Walmart, and that she had a history of mental health treatment including being seen at Samaritan Crisis Care for depression in December, 2004. (Tr. 273-78). Dr. Jones also reported that Plaintiff appeared very drawn and haggard, her facial expressions ranged from anxious to appropriate, she was cooperative, her speech was normal, and that her presenting demeanor was resigned and dysphoric. *Id.* Dr. Jones noted that Plaintiff's affect was sad, that she

5

described her primary emotional state as depressed, she had nervous laughter throughout the interview, she presented as preoccupied with her own symptomatology, and that she evidenced a degree of confusion. *Id.* Dr. Jones also noted that Plaintiff presented as alert to distracted with regard to her degree of consciousness, was oriented, had sufficient judgment and common sense to live independently, and that she was not involved in any ongoing mental health treatment but was on psychotropic medications. *Id.* Dr. Jones identified Plaintiff's diagnoses as pain disorder with psychological and medical features, psychological factors affecting physical condition, and major depression, recurrent. *Id.* Dr. Jones identified Plaintiff's GAF as 55 and opined that Plaintiff's abilities to relate to others, to understand, remember, and follow instructions, and to withstand the stress and pressures associated with day-to-day work activity were moderately impaired and her ability to maintain attention and concentration was not significantly impaired. *Id.*

Examining psychologist Dr. Flexman reported on October 11, 2005, that Plaintiff had a high school education, last worked on April 26, 2004, for Walmart, quit drinking alcohol in 1997, admitted to using marijuana in the past, had a slumped posture, normal facial expressions and body movements, and that her speech was normal. (Tr. 308-11). Dr. Flexman also reported that Plaintiff was oriented, did not display overt pain behavior, had a flat attitude, appropriate affect, and no lability, and that her attention span was fair but her effort was poor. *Id.* Dr. Flexman noted that Plaintiff's concentration was good, her reliability was fair and suggested moderate malingering, her memory was fair, her judgment was fair, and that obsessive thinking concerning somatic or other psychological problems was judged to be out of proportion with reality with somatization present. *Id.* Dr. Flexman identified Plaintiff's diagnoses as alcohol abuse in current remission, depression NOS, and personality disorder NOS, and he assigned her a GAF of 55. *Id.* Dr. Flexman opined that

6

Plaintiff's abilities to understand, remember, and carry out short, simple instructions, to make judgments for simple work-related decisions, and to maintain sustained attention and concentration were slightly impaired and her ability to respond appropriately to work pressures in a normal work setting was moderately impaired. *Id.*

Plaintiff sought treatment at Daymont Behavioral Care in January, 2006. It was noted that her mood was depressed and anxious and her diagnoses were identified as anxiety disorder, NOS, a depressive disorder NOS, and rule out depressive disorder or dysthymia, and she was assigned a GAF of 50. (Tr. 366-75). Plaintiff apparently did not return to Daymont.

Plaintiff was hospitalized February 23 to March 5, 2006, after exhibiting symptoms of bipolar affective disorder, panic attacks, polysubstance abuse, and personality disorder. (Tr. 380-414). Plaintiff was treated with medications and therapy and was discharged with the mental health diagnoses of alcohol abuse unspecified use, panic disorder without agoraphobia, cannabis (marijuana) abuse unspecified use, borderline personality disorder, paranoid personality disorder, and antisocial personality disorder. *Id.*

The record contains a copy of Plaintiff's treatment notes from Advanced Therapeutic Services dated May 31, 2006, through February 13, 2008. (Tr. 562-89; 629-43). Those notes reveal that when the mental health counselor first evaluated Plaintiff, he noted that she was oriented, had good recent and remote memories, had normal speech, was able to manage activities of daily living and make reasonable life decisions, and had normal thought processes. *Id.* The counselor identified Plaintiff's diagnoses as major depressive disorder, recurrent and moderate and alcohol dependence in full remission. *Id.* Plaintiff continued to receive mental health treatment from the counselor and psychiatrists Dr. Blair and Dr. Gollamundi. *Id.* Over time, Plaintiff's mental health treatment

7

providers described Plaintiff's symptoms as improved and mild. *Id.*

Dr. Blair reported on May 30, 2007, that Plaintiff's diagnoses were major depressive disorder, recurrent, and severe, anxiety disorder NOS, and pain disorder associated with both psychological factors and a general medical condition; he assigned her a GAF of 40. (Tr. 559-61). Dr. Blair also reported that Plaintiff had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, frequent deficiencies in concentration, and repeated episodes of deterioration or decompensation under stress. *Id.* Dr. Blair noted that Plaintiff had marked impairments to her abilities to make occupational adjustments, moderate to marked to extreme impairments to her abilities to make performance adjustments, and moderate to marked impairments to her abilities to make personal-social adjustments. *Id.* Dr. Blair opined that Plaintiff's prognosis was guarded due to the chronicity of her difficulties and co-morbid medical problems. *Id.*

As noted above, Plaintiff argues in her Statement of Errors that the Commissioner erred by rejecting Dr. Blair's opinion about Plaintiff's abilities to perform the mental demands of work. (Doc. 8).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings

8

alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R.

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

§404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. Blair's opinion that Plaintiff was markedly impaired with respect to her abilities to perform work-related mental activities, Judge Shell determined that it was not supported by his clinical notes and was inconsistent with other evidence of record. (Tr. 27; 29).

As noted above, Dr. Blair reported in May, 2007, that Plaintiff had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning,

10

frequent deficiencies in concentration, repeated episodes of deterioration or decompensation under stress, marked impairments to her abilities to make occupational adjustments, moderate to marked to extreme impairments to her abilities to make performance adjustments, and moderate to marked impairments to her abilities to make personal-social adjustments. However, for several reasons, the Commissioner did not err by rejecting Dr. Blair's opinion.

First, the Court notes that Dr. Blair based his opinion at least in part on Plaintiff's "co-morbid medical problems". However, Dr. Blair is a psychiatrist and Plaintiff's medical problems are outside his area of expertise.

In addition, Plaintiff's treatment notes from Advanced Therapeutic Services reveal that over time, Plaintiff's mental health treatment providers reported that Plaintiff's mental status exams were either essentially normal, (Tr. 563; 567; 585), or that her symptoms were stable and/or had improved, (Tr. 562; 563-64; 567; 577; 579; 581), or that her symptoms were, at worst, mild. *Id.* Additionally, those notes also reveal that Plaintiff's mental health care providers determined that Plaintiff's thought processes and speech were normal, she had no side effects from her medications, her concentration was "within normal limits", and that Plaintiff expressed no suicidal ideation. *Id.* Dr. Blair's May, 2007, opinion is simply not supported by his clinical notes or by the clinical notes from the other Advanced Therapeutic Services mental health care providers.

In addition, Dr. Blair's May, 2007 opinion is inconsistent with other mental health evidence. For example, Dr. Jones reported that while Plaintiff's affect was sad and her demeanor was resigned and dysphoric, her speech was normal, she was oriented, had sufficient judgment and common sense to live independently, and that her abilities to perform work-related mental activities were, at worst, moderately limited.

11

Dr. Flexman reported that Plaintiff had a flat attitude but an appropriate affect, no lability, a fair attention span, and that her speech and body movements were normal. Dr. Flexman also reported that Plaintiff's concentration was good, her memory and judgment were fair, and that her reliability suggested moderate malingering. Finally, Dr. Flexman opined that Plaintiff's abilities to perform work-related mental activities were, at worst, slightly to moderately impaired.

Finally, Dr. Blair's opinion is inconsistent with the reviewing psychologists' opinions. See Tr. 279-96; 347-64.

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Blair's May, 2007, opinion.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

August 10, 2011  s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).